UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LATASHA LEE, O.B.O. T.J.L.                CIVIL ACTION NO. 12-cv-0025

versus                                     JUDGE STAGG

COMMISSIONER, SOCIAL                       MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

### REPORT AND RECOMMENDATION

**Introduction**

T.J.L. was born in December 1999. Her mother, Latasha Lee (Ms. Lee or Plaintiff), filed on her behalf an application for Supplemental Security Income in October 2009. ALJ Romona Scales issued a decision that the child was not disabled within the meaning of the regulations. The Appeals Council denied review, resulting in a final decision by the Commissioner. Ms. Lee filed this appeal. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed. A similar recommendation was made recently in a sibling's case, 11 CV 1910.

**The ALJ's Findings**

A child is considered disabled if she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. §1382(c)(a)(3)(C)(I). The Commissioner has published regulations to implement that standard. They require a three-step evaluation process. 20 C.F.R. §416.924.

The first step is to determine whether the child has engaged in substantial gainful activity. If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe", meaning more than a slight abnormality that causes only minimal functional limitation. The third step involves a determination of whether the child's impairments meet, medically equal, or functionally equal in severity a listed impairment. §416.924a(d). If so, and the twelve month durational requirement is met, the child is disabled. If not, the child is not disabled. §416.924(d)(1) and (2).

The ALJ found that T.J.L. passed the first two steps of the evaluation because (1) she had not been working and (2) she suffered from severe impairments in the form of attention deficit hyperactivity disorder (ADHD), conduct disorder, and history of hallucinations. (Tr. 11). She found at step three that T.J.L.'s impairments did not meet or medically equal a listed impairment, a finding which is not challenged. She then proceeded to determine whether T.J.L. has impairments that functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for yourself

(6) health and physical well-being.

§416.926a(b)(1).  The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. A marked limitation is "more than moderate" but "less than extreme." It interferes seriously with the child's ability to independently initiate, sustain or complete activities.  It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean.  §416.926a(e)(2).  The child will be considered disabled if she has an extreme limitation in one domain or a marked limitation in two domains.  §416.926a(d).

The ALJ considered evidence that included an opinion from state agency consultant Dr. Julie Doolin, a psychiatric evaluation from Dr. Greg Brown, and a report from third-grade teacher Tiffany Abney.  The ALJ found that the child had no limitation in the domains of moving about and manipulating objects, caring for herself, and health and physical well-being. She found that the child had a "less than marked" limitation in acquiring and using information and attending and completing tasks. She found that the child had a marked limitation in interacting and relating to others.  The ALJ concluded the child was not disabled because there were not marked limitations in two domains or a severe limitation in any domain.

**Issues on Appeal**

Ms. Lee assigns two issues for appeal. She first argues that the ALJ wrongfully picked and chose evidence to support her decision; the ALJ cited one line of Dr. Brown's report that

stated the child had an intact memory but did not address the rest of the report in which Dr. Brown suggested the child had significant problems. Ms. Lee argues on her second issue that the ALJ's decision is not consistent with or well supported by the non-medical evidence on which the ALJ relied. This argument faults the ALJ for relying on the teacher's report while virtually ignoring Dr. Brown's report.

**Standard of Review**

This court's standard of review of the ALJ's decision is limited. Appellate relief is available only when (1) there is a lack of "substantial evidence" to support the ALJ's determination or (2) the ALJ's decision does not comport with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

Tiffany Abney, a third-grade teacher at a local elementary school, completed a teacher questionnaire (Tr. 167-74) in November of 2009, when T.J.L. was not quite ten years old. Ms. Abney wrote that she had known the child for 3 months and was with her six hours a day. She also noted that the child had been absent often for reasons the teacher did not know.

Ms. Abney checked boxes on the form to indicate the level of problem the child had

in various areas. The levels of problem are no, slight, obvious, serious, and very serious. Relevant to acquiring and using information, she checked boxes to indicate that the child had no problem or only a slight problem in all categories (e.g., comprehending oral instructions, reading and comprehending written material, understanding and participating in class discussions, and expressing ideas in written form). With respect to attending and completing tasks, she indicated a slight or no problem in all categories except completing homework assignments. Ms. Abney wrote that the child is independent in class, and even asks to help others, but she often forgets her books, and homework is usually incomplete or not even attempted. In the domain of interacting and relating with others, the teacher indicated the child had no problem in the 13 areas of inquiry, except for slight problems in seeking attention appropriately and following rules. No other significant problems were noted.

Dr. Julia Doolin, Ph.D., a state agency consultant, evaluated the records (but not the child) and completed an evaluation form. She found a "less than marked" limitation in (1) interacting and relating with others and (2) attending and completing tasks. She found no limitations in the other domains. Tr. 245-50.

Medical records show that the child was hospitalized from August 24 to September 1, 2009 at Brentwood Hospital. The records reflect that the 9-year-old child was hospitalized for out-of-control behavior, including fighting at school and home, fighting on the bus, talking back to the teacher, threatening to kill her uncle, seeing things out her window and on her computer, hearing voices, and becoming agitated and fearful. During her hospitalization, the child was placed on Risperdal, with the dosage gradually increased to the

point where she was not hearing voices, not seeing visions, not paranoid, and was able to get along somewhat better with others. She still had impulse control and poor listening skills. Medication for ADHD gave a remarkable improvement. The child was discharged with prescriptions for medication and directions for follow-up care. Tr. 229-36.

Other records show that the child reported, just prior to being hospitalized, that she had seen the family's dead dog. Her mother, who was diagnosed as bipolar at an early age, had sometimes discontinued or not refilled the child's medicine because of the mother's belief as to what the medicine did to the child or her recollection of how it affected her. T.J.L. failed the first grade, but a report said she was considered very smart. She had not been suspended in the year the evidence was gathered, but she had been at least threatened with suspension from riding the bus. At a visit almost two months after the hospitalization, T.J.L.'s mother reported the child was still fighting and being disrespectful. A cat had scratched T.J.L., and the mother later found out the child cut the cat's nail to the meat and threatened that next time she would cut the cat's whiskers. Tr. 211-227.

Dr. Greg Brown saw T.J.L. for a psychiatric evaluation several months later, in April 2010. He noted that the child was "blatantly defiant towards her mother during the appointment," and her thoughts seemed to jump from one subject to another rapidly. She had trouble concentrating and focusing, and she was said to be failing the third grade. Ms. Lee rated the child's ADHD at 48 out of 54 that day. Medications had been prescribed but never started or discontinued due to side effects. Tr. 258. Dr. Brown concluded that the child would continue out-patient treatment with him, started new medication to help with ADHD,

mood stabilization, and psychotic symptoms. He recommended a special education evaluation and a psychiatric reevaluation in eight weeks. Tr. 260.

Plaintiff's argument about how the ALJ picked and chose from the evidence focuses on a description of the mental status examination, set forth below:

> T.J.L. is a 10-year, four-month-old African American female who appears her stated age. She is casually dressed in disheveled and unkempt manner. She is alert and oriented to person, place, time and situation, but not to the actual date of the month. She exhibits poor attention and concentration with thought derailment and easy distractibility along with flight of ideas. She exhibits psychomotor agitation and it was very difficult for her to sit still even briefly. Her speech is difficult to understand due to a phonological disorder and is quite pressured and lacks goal direction. Her mood is irritable, depressed and anxious. Her affect is mood congruent, nervous, sad and angry. She denies current suicidal or homicidal ideations, but admits that she has made threats to kill her uncle and other members of the family in the recent past. She denies any current auditory or visual hallucinations, but is quite suspicious and guarded and becomes more agitated and angry when I asked questions about the content of her hallucinations. Her intelligence is estimated to be in the borderline low range of functioning based upon her fund of knowledge and previous academic performance history and current struggles. Her memory is intact for immediate recent and remote recall for past details and current events along with three out of three objects immediately and after five minutes. Her insight and judgment are poor.

Tr. 259.

**Analysis**

The ALJ stated that he gave only limited weight to the opinion of Dr. Doolin because he found the record as a whole indicated that the child was more limited than her opinion indicated. Tr. 12. The ALJ, to support her finding of a less than marked limitation in the domain of acquiring and using information, cited the teacher report that the child's

functioning was the same or better than others in the class. She said that the report was "given close attention" because the teacher saw the claimant on a daily basis. Tr. 13-14.

The ALJ supported a conclusion that the child had a less than marked limitation in attending and completing tasks by citing the teacher's report that the child had little or no problems in the area. The ALJ also made her one and only reference to Dr. Brown's report: "Also worth noting, an April 2010 mental status examination indicated that the claimant's memory was intact for recent and remote recall." Tr. 15.

When the ALJ assessed a marked limitation in interacting and relating with others, she noted the in-patient psychiatric services for fighting, disrespectfulness, and hallucinations, but she found the child was not limited to a greater degree because, for example, the teacher indicated the child had no problem playing cooperatively with other children, making and keeping friends, asking permission, respecting adults, and expressing anger appropriately. The child's functioning, according to the teacher, was the same or better than others in the class. Tr. 15-16.

Plaintiff faults the ALJ for essentially ignoring Dr. Brown's report in her written decision and, to the extent the ALJ relied on the report from the teacher to disregard Dr. Brown's report, points out that the teacher is not an acceptable medical source under the regulations but merely an other source. The regulations require evidence from an acceptable medical source, such as a licensed physician, "to establish whether you have a medically determinable impairment(s)." 20 C.F.R. § 416.913(a). Medical reports from such sources should include a statement about what the person can still do despite her impairments.

Section 416.913(b)(6). For a child, this means an opinion about the child's functional limitations compared to children her age who do not have impairments in the six functional domains. Section 416.913(c)(3).

Once the agency finds an impairment to exist, based on evidence from an acceptable medical source, the agency "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments." Section 416.913(d). Other sources include school teachers. Section 416.913(d)(2).

Plaintiff argues that Dr. Brown's report "clearly indicates that [T.J.L.] has marked to extreme limitations in her development," but Plaintiff does not specify which particular domains should have been found more limited. The Commissioner noted this, and Plaintiff in her reply emphasized her reliance on the general rule that "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000). That is a jurisprudential rule, but social security proceedings need not be procedurally perfect to withstand judicial review. The claimant must demonstrate that meaningful prejudice was caused by the rule breach. Morris v. Bowen, 864 F.2d 333, 335-36 (5th Cir.1988) (applying harmless error standard in social security case). See also Palomo v. Barnhart, 154 Fed.Appx. 426, n. 13 (5th Cir. 2005).

Dr. Brown's report is perhaps most relevant to the domain of interacting and relating with others, as it describes the child being easily distracted, difficult to understand, irritable, agitated, and having made threats to kill members of her family. The regulations state that in interacting and relating with others, a child age 6 to 12 should be able to develop more

lasting friendships with children her age, begin to understand how to work in groups, and have an increasing ability to understand another's point of view and tolerate differences. The child should be able to talk to people of all ages, share ideas, tell stories, and speak in a manner that is readily understood.  Some examples of limitations, which are not necessarily marked or extreme, are no close friends, withdrawal from people the child knows, overly anxious of meeting new people, difficulty playing games or sports with rules, and difficulty communicating with others.  20 C.F.R. § 416.926a(i).

Dr. Brown's report certainly indicates limitations in this domain, but the teacher's report suggests a much lesser degree of limitation.  The ALJ found a marked limitation in this domain, so she plainly recognized that the problems were more serious than suggested by the teacher.  It certainly would have been preferable had the ALJ specifically addressed Dr. Brown's report in this and other aspects of her decision.  An ALJ is not required to discuss every piece of evidence, but she must discuss the uncontroverted evidence she chooses not to reply upon so that the court can perform its role of reviewing the Commissioner's decision for support by substantial evidence.  The court is unable to conduct a meaningful review where significant and probative evidence is rejected or overlooked without comment or explanation.  G.S.T. v. Commissioner, 2009 WL 3031678, *2 (W.D. La. 2009).  The court has not, however, reversed in such cases unless the omission was so significant as to prevent effective judicial review or deprive the agency of substantial supporting evidence.  O.W.S. v. Commissioner, 2012 WL 681712, *4 (W.D. La. 2012).

This case does not require reversal.  There is no reasonable likelihood, that, had the ALJ more specifically discussed Dr. Brown's report that, given the teacher evaluation and

other evidence, she would have elevated her finding from marked to extreme. Dr. Brown's report is evidence of a greater limitation than suggested by the teacher report, but it does not contain findings that give the court reason to believe an extreme limitation might have been found in any domain or a marked limitation found in a second domain, if the ALJ had more fully addressed the report.

Plaintiff also attacks the ALJ's decision for implicitly valuing the teacher's report over that of the physician. The regulations plainly permit the agency to consider the evidence from teachers, parents, and other sources in assessing the extent of a child's limitations flowing from an impairment. The ALJ "has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." Gonzales v. Astrue, 231 Fed. Appx. 322, 324 (5th Cir. 2007). The ALJ should have more properly discussed and assessed Dr. Brown's report[1] in weighing the competing evidence, but the omission does not require reversal in the context of this case.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

---

[1] We know the ALJ did not completely overlook Dr. Brown's report since she did acknowledge it once in her decision.

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of February, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE